UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24300-BLOOM/Torres

TAMMY GOURLEY,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's Motion for Summary Judgment ("Motion"). ECF No. [45]. Plaintiff Tammy Gourley filed a Response in Opposition ("Response"), ECF No. [52], to which Defendant filed a Reply in Support ("Reply"). ECF No. [60]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, Defendant's Motion is granted.

**I.  BACKGROUND**

In her Complaint, Plaintiff asserts three counts of negligence against Defendant: Vicarious Liability (Count I); Negligence (Count II); and Negligence for Failure to Warn of the Known Hazardous Condition (Count III). ECF No. [1].

**A.  Material Facts**

The following facts are not genuinely in dispute unless otherwise noted: Plaintiff and her husband were both disabled at the time of the subject incident. ECF Nos. [51] ¶ 15; [59] ¶ 15. On November 12, 2022, Plaintiff and her husband were cruise passengers on Defendant's ship, the Carnival *Vista*. ECF Nos. [44] ¶ 1; [51] ¶ 1. During the cruise, a video played in the passenger

cabins instructing passengers not to rush when disembarking or using the gangway because of the possibility of injuries. ECF Nos. [51] ¶ 22; [59] ¶ 22. On the morning of the incident, Defendant announced the gangway would be used for disembarking disabled and elderly passengers. ECF Nos. [51] ¶ 21; [59] ¶ 21. Plaintiff and her husband got up early that morning to make their way to the meeting area for disabled and elderly disembarking. ECF Nos. [51] ¶ 23; [59] ¶ 23. Defendant organized the disabled and elderly passengers in a line while in the dining room area. ECF Nos. [51] ¶ 24; [59] ¶ 24. Plaintiff testified that Defendant's crewmembers attempted to tell her husband he could not board with the disabled and elderly group because they did not believe he was disabled. ECF Nos. [51] ¶ 25; [59] ¶ 25. Plaintiff's husband was not the only passenger whose disability was questioned by the crew. Two disabled veterans whom Plaintiff befriended on the trip had a similar argument with Defendant's crewmembers about disembarking with the disabled and elderly passengers. ECF Nos. [51] ¶ 26; [59] ¶ 26. Due to the commotion caused by the Carnival crew trying to stop Plaintiff's husband and the disabled veteran couple from disembarking with the disabled group and trouble scanning her Sign and Sail card, Plaintiff became separated from her husband at the gangway checkpoint. ECF Nos. [51] ¶ 27; [59] ¶ 27.

The subject incident took place on the gangway as Plaintiff was disembarking the ship. ECF Nos. [44] ¶ 2; [51] ¶ 4. According to Plaintiff, as she disembarked, two passengers hit her with their suitcases and ran over her left ankle. ECF Nos. [44] ¶ 9; [51] ¶¶ 9, 31; [59] ¶ 31. There is no evidence that the two passengers involved in the incident were not disabled or otherwise not permitted to be on the gangway at the time of the incident. ECF Nos. [44] ¶ 10; [51] ¶ 10.[1] Plaintiff could not recall if there was anyone else on the gangway when the incident occurred, other than

---

[1] Plaintiff contends that Defendant never provided information regarding passengers who disembarked the ship 15 minutes before and 15 minutes after Plaintiff disembarked, so the identity of those who ran into her is unknown. *See* ECF No. [51] ¶ 10.

2

the two people involved and a disabled man with his family. ECF No. [44-3] (Gourley Dep. 38:10-38:16).

Defendant considers maintaining an orderly flow of passengers when disembarking the ship to be part of its job. ECF Nos. [51] ¶ 19; [59] ¶ 19. Accordingly, Defendant's policies require that "[t]he staff captain must make sure the gangway is sufficiently manned to control passengers and crew movement and that the gangways are operated within their safe limits." ECF Nos. [51] ¶ 18; [59] ¶ 18 (Diaz Dep. 16:4-16:13). At the time of the incident, Defendant had at least three crewmembers working at the checkpoint, all three of whom were trained by Defendant to stop passengers from running on the ship. ECF Nos. [51] ¶¶ 34-35; [59] ¶¶ 34-35. While additional Carnival personnel are sometimes stationed down the gangway, Defendant contends that crewmembers are not stationed at specific spots along the gangway. ECF No. [59] ¶ 36. On the day of the incident, Plaintiff did not encounter any crew on the gangway. ECF Nos. [51] ¶¶ 37, 39; [59] ¶¶ 37, 39.

Defendant seeks summary judgment as to all three counts in the Complaint, contending (1) there is no evidence that any crew member was negligent and, thus, there is no basis to hold Defendant vicariously liable; (2) there is no evidence of a dangerous condition; and (3) even if a dangerous condition existed, there is no evidence Defendant was on notice of the dangerous condition.  Plaintiff responds that (a) Defendant has a non-delegable duty to provide safe ingress and egress that includes a safe gangway; (b) Defendant failed to properly monitor the gangway, allowing passengers to run down the gangway with luggage while disabled passengers were disembarking; and (c) the corrective measures taken by Defendant are evidence of constructive notice.

## II.      LEGAL STANDARD

### A. Summary Judgment Motion

The Court may grant a motion for summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the non-moving party 'must do more than simply show some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.,* 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed R. Civ. P. 56(c). Even where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts, summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

    The court may not dispute a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### III. DISCUSSION

#### A. Maritime Law

    The parties agree that this case is governed by maritime law. ECF No. [45] at 3; [52] at 3. In analyzing a maritime tort case, courts rely on general principles of negligence law. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to [a p]laintiff's negligence claim and [a p]laintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

Moreover, a "cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident-causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)); *see also Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959)), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

To establish the owner of a ship in navigable waters breached its duty of care under a theory of direct liability, a plaintiff must show: "(1) a dangerous condition existed; (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that defendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

In contrast, when a plaintiff asserts a claim of vicarious liability, there is no need to establish that a carrier had actual or constructive notice of the risk-creating condition because "a shipowner's duty to a plaintiff is not relevant[.]" *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022). Indeed, "[w]hen the tortfeasor is an employee, the principle of vicarious liability allows 'an otherwise non-faulty employer' to be held liable 'for the negligent acts of that employee acting within the scope of employment[,]'" because "liability for the agent's negligence is legally

6

imputed to the non-negligent principal." *Id.* (quoting *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011) (citing *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). Applying these legal principles, the Court considers the parties' arguments in turn.

### B. Count I—Vicarious Liability

In Count I, Plaintiff alleges that Defendant is liable for the acts of its "crew members who negligently failed to follow the ship's guidelines on the safe operation of the disabled passenger gangway checkpoint" by not stopping two non-disabled and non-elderly passengers from accessing and running down the gangway while elderly and disabled passengers were disembarking the ship. Count I also alleges that Defendant's crewmembers negligently separated Plaintiff from her husband moments before the subject incident. *See* ECF No. [1] at 3-5.

Unlike a direct liability claim, in order to establish that a defendant is vicariously liable, a "passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bah.)*, 4 F.4th 1164, 1170 (11th Cir. 2021). However, a plaintiff still must prove the essential elements of negligence on the part of one of the defendant's employees to trigger vicarious liability. *See id*. at 1167-68.

Defendant argues it is entitled to summary judgment because there is no evidence that any individual crew member was negligent. Defendant contends that the record fails to establish that there were separate gangways for disabled and non-disabled passengers or that the passengers running down the gangway were not disabled. ECF No. [45] at 4. Therefore, there can be no basis to conclude that the crewmembers on the gangway acted negligently simply because they allowed two passengers onto the gangway while Plaintiff was disembarking. *See id.*

Furthermore, even if some of Defendant's crewmembers did act negligently, Defendant insists it is still not vicariously liable because Plaintiff has failed to identify a specific crewmember who was negligent.

Plaintiff responds that she has provided evidence identifying the three negligent employees as the three crewmembers operating the gangway. Plaintiff also maintains that she has shown that those crewmembers acted negligently at the time of the incident. She points out that the crewmembers testified "they were trained to not let passengers run because of the potential for accidents," yet they took no action to prevent the passengers who injured the plaintiff from running down the gangway. ECF No. [52] at 12. Therefore, Plaintiff contends the crewmembers breached their "non-delegable duty to provide [a] safe means of egress from the ship." *Id.*

Not only does Plaintiff argue the crewmembers negligently failed to stop passengers from running down the gangway, but she also contends that the evidence shows the crewmembers compounded their negligent conduct by disputing the validity of her husband and other disabled passengers' disability status, which ultimately caused Plaintiff to become separated from her husband. *Id*. Plaintiff insists that a reasonable jury could infer that the commotion and delay caused by crewmembers inappropriately questioning the legitimacy of passengers' disability caused a holdup, which then led other passengers to rush down the gangway to make up for lost time. *See id.* at 12.

The Court finds that while Plaintiff has identified specific crewmembers, the record evidence fails to establish that the crewmembers' alleged misconduct was negligent. To understand why, it is important to first identify the specific negligent conduct Plaintiff pleaded in her vicarious liability claim. Critically, Plaintiff alleged that the crewmembers were negligent because they allowed the passengers who slammed into Plaintiff's ankle to *access* the gangway checkpoint and

8

allowed those passengers onto the disabled ramp while the disabled passengers were disembarking the ship. Nowhere in Count I does Plaintiff allege that the crewmembers were negligent because they allowed passengers to run or rush down the gangway. Therefore, although Plaintiff attempts to argue in her Response that the crewmembers were negligent by failing to stop the passengers who ran over her ankle from running down the gangway, those new facts are irrelevant to the Court's inquiry as they set forth a new theory of negligence that was not a part of the Complaint. *See Ibeh v. Wilson*, No. 23-13128, 2024 WL 2723253, at *1 (11th Cir. 2024) ("In a brief opposing summary judgment, a plaintiff may not raise a new theory of liability based on unpleaded factual predicates in support of an already pleaded claim.") (citing *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017));[2] *Toussaint v. Katzman Chandler, P.A.*, No. 21-CV-60635, 2022 WL 1664114, at *4 (S.D. Fla. Apr. 1, 2022); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("At the summary judgment stage, the proper procedure for a plaintiff to assert a new claim is to amend the complaint under Fed. R. Civ. P. 15(a).") (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Accordingly, the Court must only consider whether Defendant's crewmembers were negligent in allowing the two passengers who ran into Plaintiff to access the gangway while Plaintiff and other elderly and disabled passengers were disembarking the ship. However, Plaintiff has failed to put forth evidence to support such a finding. As Defendant correctly points out, there is no evidence that the two passengers who rushed down the gangway were not permitted to be

---

[2] In *Ibeh*, the Eleventh Circuit affirmed the district court's granting of summary judgment, where the claim in the plaintiff's complaint was based on "the security office's failure to take his passport, comments on his national origin, and forceful removal of him from their office. But in his brief opposing summary judgment, [the plaintiff] based his claim on his coworkers' conduct in making fun of his cultural attire, questioning his capabilities, and telling him that Africans were not allowed to work in his department." 2024 WL 2723253, at *1. The Eleventh Circuit found that the "[t]he district court properly rejected this new theory of liability because Ibeh based it on unpleaded facts." *Id.*

there, as Plaintiff has failed to establish that those passengers were not elderly or disabled, or even if they were not elderly or disabled, that such passengers were not permitted to access the gangway. Furthermore, Plaintiff does not identify any ship guidelines or policies that the crewmembers failed to comply with by allowing the passengers who injured Plaintiff to be on the gangway at the time of the subject incident.

Even assuming *arguendo* that the Court could properly consider Plaintiff's new theory that the crewmembers were negligent in allowing passengers to run down the gangway while Plaintiff and other elderly and disabled passengers were attempting to disembark, the record evidence still fails to establish a *prima facie* negligence case.

The three crewmembers testified that when they see someone running, their training dictates they advise the individual to stop. *See* ECF No. [54-1] (Tedeo Dep. 10:15-10:21); ECF No. [54-2] (Ravindran Dep. 10:17-11:2); ECF No. [54-3] (Corrales Dep. 18:24-19:7). However, simply because the crewmembers were trained to stop passengers from running on the ship does not necessarily mean the mere fact that passengers were running down the gangway is indicative of negligent misconduct that would form the basis for a vicarious liability claim. Even in the vicarious liability context, a defendant is only liable for *negligent* acts of its employees, and if a tortfeasor did not personally create or otherwise contribute to the dangerous condition, the tortfeasor must then at least be aware of the danger before he or she has a duty to take corrective action. *See Holland*, 50 F.4th at 1094 (explaining that for vicarious liability claims, "liability for the agent's negligence is legally imputed").[3]

---

[3] While vicarious liability obviates the need for an employer to be on notice of the dangerous or risk-creating condition, that does not mean the defendant's employees have a duty to prevent risks or harms of which the employees are not reasonably aware. Where the employee has not created the condition, notice to the employee is still required. The only reason the notice to the defendant employer is obviated in a vicarious liability claim is because the employee's knowledge is imputed to the defendant. *Cf. Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001) ("When the negligence which produces the

10

Here, none of the crewmembers testified to seeing individuals run down the gangway or a collision take place on the date of the incident, and Plaintiff fails to point to evidence that the crewmembers were notified or otherwise aware of the passengers rushing down the gangway prior to the subject incident. ECF No. [54-2] (Ravindran Dep. 11:22-12:1); ECF No. [54-3] (Corrales Dep. 10:17-10:22.). Accordingly, because the crewmembers were unaware of the need to stop any passengers from running, the crewmembers cannot be deemed negligent for failing to take such corrective measures.[4] Consequently, the Court finds that Plaintiff has not provided sufficient evidence to prove her vicarious liability based on Defendant's crewmembers' failure to stop the passengers who injured Plaintiff from either accessing or running down the gangway at the time of the subject incident.

Furthermore, the Court finds that the evidence in support of Plaintiff's second theory of negligence—that Plaintiff was injured because the crewmembers negligently caused her to be separated from her husband—is also insufficient to establish a vicarious liability claim.

The evidence shows that there was a commotion at the gangway checkpoint because Carnival crewmembers questioned Plaintiff's husband and other disabled veterans about their disability status. ECF No. [44-3] (Gourley Dep. 28:4-29:15). Plaintiff testified that because of the commotion caused by the crewmembers' negligent interrogation and accusations, she was separated from her husband and forced to proceed down the gangway alone. Plaintiff also argues

---

injury is that of an employee of the defendant, then the matter of the employer's knowledge of the existence of the dangerous condition becomes inconsequential because the knowledge of the employee is chargeable against the employer and his negligent act committed in the course of his employment is binding upon the employer."). To hold otherwise would mean maritime vicarious liability claims would effectively turn into strict liability regimes—a standard neither the Supreme Court nor the Eleventh Circuit has imposed in a traditional maritime negligence case.

[4] The outcome may have been different if Plaintiff had pointed to evidence of affirmative acts that the crewmembers had taken that created the dangerous condition.

11

a reasonable jury could infer the crewmembers were the cause of passengers running because the dispute with her husband created a holdup. ECF No. [52] at 13.

The Court finds that Plaintiff has failed to establish that the crewmembers' purported negligent conduct caused her to be separated from her husband, or that the separation caused her to sustain her alleged injuries. Indeed, Plaintiff testified:

> Q: Okay. Can you just walk me through what happened when the accident happened how it all occurred?
>
> A: Sure. So we were in the -- I guess it's, like, a dining room area, and they were telling us to get up and get in line. So we got up and got in line and it was one of the Carnival reps that was managing that area for the folks to get off the boat. So we're in line and my husband is in front of me, and the guy stops my husband and tells him that he is not disabled and that he needs to go get in a different line and get in the back of the line. And my husband explained to him he is disabled, and then he proceeds to tell him what is wrong with him, that makes him disabled and then this man jumped -- (unintelligible).

ECF No. [44-3] (Gourley Dep. 26:23-27: 13).

> A: So another couple that was a disabled veteran as well, he was hanging out with us a little bit in the dining room and he heard what the man had said to my husband, and he jumped in front of me because he was, like, behind me a little bit, and he cut in front of me and he proceeded to argue with the Carnival representative, saying that he is also disabled and he ain't stopping him from getting off the boat either. And then he is yelling at my husband to stop and my husband just continued to walk off because he was determined that he was not getting off the boat, and he did not know that I was not behind him because he was so frustrated and upset. And that's how we got separated and then when I tried to -- when I was led to the gate area where you scan your card, I couldn't see my husband anymore. He had already vanished. And then my card wouldn't work. So, then they had difficulties getting my card. So, by the time they got done scanning my card, my husband was nowhere in sight. I don't know if he knew I wasn't there or what, but he is deaf in one of his ears so he probably didn't even hear me when I was screaming for him.

*Id.* at 28:9-29:12.

Plaintiff argues the crewmembers caused her to be separated from her husband, but the record evidence reflects otherwise. Not only did Plaintiff's husband ignore one of the crewmember's requests to stop and "continued to walk off," there is no testimony or other evidence

to suggest that Plaintiff was prevented from following her husband once he left. She was not forced to continue down the gangway or told she could not get out of line. *Id.* at 28:9-29:12. Accordingly, the evidence fails to show that any actions by Carnival employees caused the Plaintiff and her husband to be separated from one another prior to Plaintiff proceeding down the gangway.

Critically, there is also no reasonable basis to conclude that Plaintiff's separation from her husband caused her injuries. Plaintiff fails to explain, let alone point to any evidence to suggest how she could have avoided being run over by the two passengers running down the gangway if she had been accompanied by her husband. The inferential leap necessary to conclude that Plaintiff's husband would have stopped the other passengers from running or otherwise colliding with his wife is simply too great to be deemed reasonable. *See McNeal v. Walmart Stores E., LP*, No. 2:21-CV-711-SPC-NPM, 2023 WL 145012, at *2 (M.D. Fla. Jan. 10, 2023) ("An inference deduced from the evidence must be 'reasonable' to create a genuine dispute of material fact.") (quoting *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018)). Such speculation may not form the basis for establishing the causation element of a negligence claim. *See Berbridge*, 728 F. App'x at 932 ("[A] jury cannot be 'allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. . .. Such inference is infirm because it is not based on the evidence.'") (quoting *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1326 (11th Cir. 1982)).

Finally, Plaintiff's contention that a reasonable jury could "infer that the [negligent commotion regarding her husband's disability status] was the cause of the passengers running down the gangway" is similarly speculative and unsupported by the record. Plaintiff fails to point to any evidence that establishes, or even suggests, other passengers were held up because of the dispute between her husband and the Carnival crewmembers. Therefore, for a jury to conclude that

13

the other passengers were running down the gangway because they were held up would require the jury to make too many inferences upon inferences to be reasonable. *See Herrera v. Walmart, Inc.*, No. 23-CV-20329, 2024 WL 1285157, at *3 n.2 (S.D. Fla. Mar. 25, 2024) (explaining the law regarding inference stacking).[5] As such, Plaintiff fails to adequately prove causation with respect to Count I.

Consequently, viewing the evidence in the light most favorable to Plaintiff, there is a lack of evidence sufficient to prove Defendant's crewmembers were negligent or that their conduct caused Plaintiff's injuries. Because an employee must have negligently caused the injury to establish a vicarious liability claim, Defendant is entitled to summary judgment as to Count I. *See Celotex*, 477 U.S. at 322-23 (noting that summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### C. Evidence of a Dangerous Condition (Counts II and III)

#### i. Count II—Negligence

In Count II of the Complaint, Plaintiff alleges Defendant created a dangerous condition by allowing "both disabled and non-disabled/non-elderly passengers [to go] down the same ramp[.]" ECF No. [1] at ¶ 29. According to Plaintiff, Defendant "knew of the danger of allowing non-disabled or [non-]elderly people down the designated disabled gangway on the ship" and that this danger was the reason Defendant had crewmembers stationed at the ramp. *Id.* at ¶ 28. Plaintiff

---

[5] *See McNeal v. Walmart Stores E., LP*, No. 2:21-CV-711-SPC-NPM, 2023 WL 145012, at *2 (M.D. Fla. Jan. 10, 2023) ("While federal courts do not prohibit inference stacking, the more inferences are stacked upon one another, the less likely it is that the resulting conclusion is one that 'reasonable and fair-minded people in the exercise of impartial judgment might draw from the evidence.'") (quoting *Daniels*, 692, F.2d at 1326).

does not identify any other dangerous conditions in Count II.[6] The remaining allegations in Count II concern Defendant's negligent conduct, proximate cause, and damages. Therefore, the only dangerous condition alleged in Count II of the Complaint is that non-disabled and non-elderly individuals were permitted to access the designated disabled/elderly gangway at the same time as elderly and disabled individuals were attempting to disembark.

Defendant argues that there is no record evidence of an alleged dangerous condition that caused Plaintiff's injuries and, as such, summary judgment should be granted as to Count II. ECF No. [45] at 5. Defendant contends there is no evidence that "(a) there were separate exits for disabled and non-disabled people or (b) if there was a separate exit for disabled people, that the people who struck Plaintiff were not disabled" or elderly. ECF No. [45] at 5.

Plaintiff responds that ample evidence exists of a dangerous condition. *See* ECF No. [52]. Plaintiff first identifies her own deposition testimony in which she asserted the accident occurred on a gangway reserved for people with disabilities, which was insufficiently monitored by crewmembers. ECF No. [52] at 10-11. (Gourley Dep. 21:22-22:1). She also points to the portions of her deposition where she testified that the crewmembers working the checkpoint caused chaos by yelling at her husband and other disabled passengers while not letting them access the gangway

---

[6] While Plaintiff alleges that "Defendant was negligent and breached its duty to act with reasonable care under the circumstances by failing to implement a sufficient system to allow disabled passengers to disembark the vessel safety," the lack of a sufficient system is not, itself, a dangerous condition, but rather the conduct that Plaintiff alleges created the risk-creating condition. ECF No. [1] ¶ 30. Similarly, Plaintiff alleges that "Defendant was negligent and breached its duty to act with reasonable care under the circumstances by failing to have enough crewmembers assigned to be stationed both at the top of the gangway checkpoint area, and at other points down the gangway[.]" *Id.* at ¶ 31. Those allegations fail to establish a dangerous condition and instead show how Defendant's conduct failed to eliminate the alleged dangerous condition—i.e., non-disabled and non-elderly individuals accessing the gangway simultaneously. *See e.g., Calogerro v. Carnival Corp.*, 757 F. Supp. 3d 1324, 1330 (S.D. Fla. Nov. 25, 2024) (explaining that the overcrowding on the dance floor was the dangerous condition, not the failure to adequately monitor the dance floor); *Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1215 (S.D. Fla. 2021) ("As much as Plaintiff argues that she seeks to hold Defendant [ ] liable for its employees' 'negligent mopping,' what Plaintiff, in effect, seeks to hold Defendant [ ] liable for is its employees' negligently creating and then failing to warn about a dangerous condition on the premises i.e., a wet deck or step.").

because the crew did not believe those passengers were disabled. *Id. at 11* According to Plaintiff, her testimony establishes that the crewmembers' failure to take any action to monitor the gangway and the commotion they created caused the dangerous condition[7] which resulted in her being separated from her husband and being trampled by other passengers running down the gangway. *Id.*

To establish a breach of a defendant's duty of care in a maritime negligence case, a plaintiff must establish that "a dangerous condition existed that caused the claimed injury." *Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1319 (S.D. Fla. 2020); *see also Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1369 (11th Cir. 2018) ("To survive summary judgment on his negligence claim based on a dangerous condition, [a plaintiff] must produce evidence, sufficient for a jury to find for him, that the [condition identified] was a dangerous condition[.]"). "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller v. NCL (Bahamas) Ltd.*, No. 1:15-CV-22254-UU, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)). "Rather, it is the plaintiff's responsibility to come forth with enough evidence proving there was a dangerous condition." *Klein v. Seven Seas Cruises S. DE R.L.*, No. 16-21981-CIV, 2017 WL 3405531, at *3 (S.D. Fla. Aug. 7, 2017). Therefore, without evidence that an existing condition was dangerous, a plaintiff's maritime negligence claim will fail.

Here, while Plaintiff has furnished some evidence that Defendant utilized a designated gangway for disabled individuals, ECF No. [44-3] (Gourley Dep. 26:11-26:22, 27:1-27:13), Plaintiff has not put forth sufficient evidence to demonstrate that the alleged dangerous condition

---

[7] Plaintiff's Response never specifically identifies what she contends was the dangerous condition. *See* ECF No. [52] at 9-11.

of allowing non-disabled or non-elderly people down the designated disabled gangway on the ship existed. In fact, Plaintiff's testimony shows that, through the crewmembers' interactions with her husband, Defendant actively sought to prevent non-disabled and non-elderly people from accessing the gangway prior to the subject incident. Moreover, Plaintiff fails to point to any record evidence that non-disabled or non-elderly individuals were allowed on the designated gangway, let alone that the individuals who caused her injuries were not disabled or elderly. On summary judgment, a plaintiff "can no longer rest on the allegations of [her] complaint. [She] must provide evidence to support each and every element" of her claims. *Kallas v. Carnival Corp.*, No. 06-20115-Civ, 2009 WL 10668178, at *4 (S.D. Fla. Jan. 14, 2009) (alterations added), *report and recommendation adopted*, No. 06-20115-Civ, 2009 WL 10668179 (S.D. Fla. Mar. 4, 2009); *see also Scott v. Carnival Corp.*, No. 1:23-CV-21936-KMM, 2024 WL 1635904, at *3 (S.D. Fla. Mar. 12, 2024) (same), *aff'd*, No. 24-11131, 2025 WL 2402001 (11th Cir. Aug. 19, 2025). Accordingly, given the absence of record evidence to support Plaintiff's allegation that the dangerous condition existed, Defendant is entitled to summary judgment as to Count II.

### ii. Count III—Negligent Failure to Warn of a Known Hazardous Condition

In Count III, Plaintiff alleges only that Defendant had a duty to warn "of the danger of allowing non-disabled or [non-]elderly people down the designated disabled gangway on the ship." ECF No. [1] ¶ 36. Similar to an ordinary negligence claim, to prevail on a claim for negligence for failure to warn of a known hazardous condition, Plaintiff must prove that "(1) a dangerous condition existed that caused the claimed injury; and (2) a defendant had actual or constructive notice of the dangerous condition." *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1268 (S.D. Fla. 2020). As explained above, Plaintiff has failed to identify any record evidence showing that the persons who caused her injuries were not disabled or elderly and, therefore, not permitted on the gangway at the time of the incident. As such, Plaintiff cannot show the alleged dangerous

17

condition caused her claimed injury, as there is no evidence that non-elderly or disabled individuals ran over her ankle. Because Plaintiff has failed to make a sufficient showing on an essential element of her failure to warn claim, Defendant is entitled to summary judgment as to Count III as well.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [45],** is **GRANTED**.
2. All pending motions are **DENIED AS MOOT**.
3. All scheduled hearings are **CANCELED**.
4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 18, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record